In re APPLICATION OF: DARIO ANTONIO
URDANETA FERRER, et al., FOR ORDER
TO OBTAIN DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS
_____/

## ORDER

THIS CAUSE comes before the Court on Delcop, LLC's and Ernesto De Luca's Motion and Incorporated Memorandum of Law to Vacate *Ex Parte* Order Granting Application for Discovery under 28 U.S.C. § 1782 and to Quash Subpoenas or, in the Alternative, to Stay; and Rule 45 Objections (DE# 25, 3/1/18). Having reviewed the motion, response, reply, the evidence in the record, and the applicable law, it is ORDERED AND ADJUDGED that Delcop, LLC's and Ernesto De Luca's Motion and Incorporated Memorandum of Law to Vacate *Ex Parte* Order Granting Application for Discovery under 28 U.S.C. § 1782 and to Quash Subpoenas or, in the Alternative, to Stay; and Rule 45 Objections (DE# 25, 3/1/18) be DENIED for the reasons set forth below.

## INTRODUCTION

In the present case, the Applicants sought *ex parte* Section 1782 discovery against Delcop LLC, and its managing members, Ernesto De Luca, Vicente De Luca and Carmelo De Luca, and banks located within this district ("Florida banks").  This Court granted the Applicants' *ex parte* 1782 Application.  Order Granting *Ex Parte* Application for Judicial Assistance in Obtaining Evidence for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 ("Order") (DE# 10, 1/26/18).

The Applicants' *ex parte* 1782 Application was premised on a dispute pending before the Colombian administrative tribunal (the "Colombian Mercantile Case") that alleged improper dilution of the Applicants' stock interest in a Colombian company, Big Group Salinas Colombia, S.A.S. (""BGS Colombia") engaged in salt mining. (DE# 6-12 at 4-17). In the Colombian Mercantile Case, the Applicants seek a declaration that certain corporate decisions are null and void. (DE# 6-12 at 17-19).

Delcop, LLC ("Delcop") and Ernesto De Luca ("Ernesto") argue that this Court should vacate the Order granting discovery pursuant to 28 U.S.C. § 1782 and should quash the subpoenas because the Applicants[1] do not meet the statutory requirements of Section 1782 or the *Intel* factors.

Delcop and Ernesto argue that the 1782 application fails because two of the discovery targets are not "found" in the District, and because the "for use" requirement is not met. Delcop and Ernest argue further that the 1782 Application fails to satisfy the *Intel* factors because: 1) the Applicant's failed to disclose a prior and pending request to the Colombian tribunal asking it to seek assistance from this Court to conduct discovery here, and also failed to disclose other relevant ongoing proceedings between the Applicants and discovery targets; 2) two of the discovery targets are participants in the foreign proceedings; 3) the Colombian tribunal is unable to provide reciprocity to a U.S. federal court seeking assistance; 4) the evidence sought is an attempt to circumvent proof-gathering restrictions; and 5) the discovery is intrusive and unduly burdensome. Alternatively, Delcop and Ernesto request that this Court stay compliance with the

---

[1]The Applicants are Dario Antonio Urdaneta Ferrer, Galveston Investment, Inc., and Kinor Investment, Inc.

subpoenas until the Colombian tribunal rules on the Applicants' prior, pending request to that tribunal for the issuance of letters rogatory to this Court, seeking the same discovery that this Court authorized when it granted the subject 1782 Application. Motion at 2 (DE# 25, 3/1/18).

In their response, the Applicants argue that they satisfied the statutory requirements of 28 U.S.C. § 1782 as well as the discretionary *Intel* factors for taking discovery in support of the civil proceedings in Colombia against Delcop, Ernesto De Luca, Carmelo De Luca, and Vicente De Luca (collectively referred to as the "De Lucas") (Delcop and the De Lucas are collectively referred to as the "Delcop Group"). Carmelo and Ernesto are managers of Delcop and directors of Big Group Salinas, Corp. ("BGS Panama"), the parent company of BGS Colombia. (DE# 6 at 3,6). The Applicants served subpoenas on the Delcop Group and banks located in this District, namely Citibank, Wells Fargo, TD Bank, Chase and Bank of America (the "Florida Banks"). The Applicants argue further that the Delcop Group's motion focuses on matters that are irrelevant to the Section 1782 analysis in an effort to confuse the issues. The Applicants assert that the Delcop Group cannot avoid the U.S. policy behind Section 1782 that mandates the production of the requested discovery, which would either establish the Delcop Group's defenses or prove their scheme to defraud. Response at 2 (DE# 33, 4/10/18).

In their Reply, Delcop and Ernesto challenge the Applicants' misrepresentations, wherein the Applicants argue that *Carmelo* De Luca and *Vicente* De Luca have moved to vacate this Court's ex parte order, when they have not. Only Delcop and Ernesto have moved. The Applicants also argue that *Carmelo* and *Ernesto* are parties to the

3

Colombian Mercantile Case, but they are not.  See Reply at 2 (DE# 39, 5/7/18).  Delcop

and Ernesto argue that the Applicants' sole predicate for the alleged relevance of the

discovery into the bank records of Delcop, Carmelo, Ernesto, and Vicente is by arguing

that "the ***Delcop Group*** agreed to provide $7 million in financing" for the salt mine

project. Id. (citing Response at 1-3 (DE# 33) (emphasis in original)).  Delcop and

Ernesto explain that the Memorandum of Understanding upon which the complaint in

the Colombian Mercantile Case is based, defines the "Delcop Group" as only "Delcop

Holding Company Limited, a Barbados company" – not Delcop, LLC, a Florida

company, not Carmelo, not Ernesto, and not Vicente De Luca. Id. at 2-3. The Delcop

Holding Company Limited had a commitment to contribute $7 million to BGS Colombia.

Id. at 3.  Delcop and Ernesto assert that the discovery of personal bank account

information is irrelevant and intrusive because the Colombian Mercantile Case is a

declaratory judgment action in which the Applicants do not seek monetary damages.

Id.

In their Reply, Delcop and Ernesto state that they "are authorized to represent

that the parties to the Colombian Mercantile Case, as well as Carmelo and Ernesto,

who are not parties to that case, are willing to stipulate that no part of the $7 million that

Delcop Holding Company Limited agreed to contribute to BGS Colombia was

transferred from any bank account of Delcop, LLC, Carmelo, Ernesto or Vicente, to any

bank account of BGS Colombia."  Reply at 4 (DE# 39, 5/7/18).

In their Motion, Delcop and Ernesto admit that "the 'Delcop Group' did indeed

contribute the $7 million, and the corporate actions involving BGS Colombia were both

adequate and necessary to protect the viability of the venture."  Motion at 4, n. 5 (DE#

25, 3/1/18).

**ANALYSIS**

**I.   28 U.S.C. § 1782 - Discovery for Use in Foreign Tribunals**

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years to provide federal-court assistance in gathering evidence for use in foreign tribunals." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).  Sub-section 1782(a) of Title 28 provides in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court. ... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C.  § 1782(a).  .  "[Sub-section] 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance ... to 'interested person[s]' in proceedings abroad."  Intel, 542 U.S. at 247; United Kingdom v. United States, 238 F.3d 1312, 1318-19 (11th Cir. 2001) ("Whether, and to what extent, to honor a request for assistance pursuant to § 1782 [is] committed to [the district court].").  Thus, the district court's decision to grant or deny an application pursuant to 28 U.S.C.  § 1782(a) is discretionary.

Before a district court may exercise its authority pursuant to Sub-section 1782(a), the applicant must satisfy four prima facie requirements:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

In re Clerici, 481 F.3d 1324, 1331-32 (11th Cir. 2007)(quoting 28 U.S.C. § 1782)(footnote omitted)); see Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1269 (11th Cir. 2014) .

Even when all four statutory requirements are satisfied, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."  Intel, 542 U.S. at 264.  "Once the prima facie requirements are satisfied, the Supreme Court in *Intel* noted these factors to be considered in exercising the discretion granted under § 1782(a): 1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for  § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; 2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; 3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and 4) whether the request is otherwise "unduly intrusive or burdensome." In re Clerici, 481 F.3d at 1334 (quoting Intel, 542 U.S. at 264-265). Additionally, "unduly intrusive or burdensome requests may be rejected or trimmed."

Intel, 542 U.S. at 265.

The Eleventh Circuit applies an abuse of discretion standard when reviewing district court decisions that resolve applications for assistance with foreign discovery pursuant to 28 U.S.C. § 1782. Sergeeva v. Tripleton Int'l Ltd., 834 F.3d 1194, 1198 (11th Cir. 2016) (citation omitted). "This deferential standard is identical to that used in reviewing the district court's ordinary discovery rulings, such as rulings as to whether the foundation for a claim of privilege has been established." United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 20001) (citation omitted); JAS Forwarding, 747F.3d 1262, 1268 (11th Cir. 2014)..

## II.  Burden of Proof

If the Court has ordered discovery under Section 1782, "the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives." In re Gyptec S.A., 2017 U.S. Dist. LEXIS 174226, *3 (S.D. Fla. Oct. 19, 2017)(quotations omitted).

## III.  Whether the Section 1782 Application Should Be Vacated

### A.  Prima Facie Statutory Requirements

Delcop and Ernesto challenge two of the four Section 1782 statutory requirements, namely: the "for use" and "found" statutory requirements. Implicitly, they concede that the applicants satisfy the other two statutory requirements, namely that the applicants are "interested persons" and the application seeks "discovery." 28 U.S.C. § 1782.

1.    "For Use in a Foreign Proceeding"

Delcop and Ernesto argue that the Applicants have not satisfied the "for use in a foreign proceeding" requirement of Section 1782 because the Applicants have failed to show that the evidence sought is relevant to the Colombian Mercantile Case or would increase their chance of success in that forum.  Motion at 9 (DE# 25, 3/1/18).  Delcop and Ernesto maintain that the Colombian Mercantile Case is a declaratory judgment action dealing with corporate decision-making by corporate actors.  Id.  Delcop and Ernesto argue that the underlying action is not an action for fraud.   They argue further that Delcop, Carmelo, Ernesto and Vicente's bank information is wholly irrelevant to the Colombian Mercantile Case.  Motion at 4.  In an effort "to definitively clarify the *irrelevance* of Applicants' intrustive discovery requests into bank records," Delcop and Ernesto make the following offer:

> **Delcop and Ernesto are authorized to represent that the parties to the Colombian Mercantile Case, as well as Carmelo and Ernesto [sic], who are not parties to that case, are willing to stipulate that no part of the $7 million that Delcop Holding Company Limited agreed to contribute to BGS Colombia was transferred from any bank account of Delcop, LLC, Carmelo, Ernesto, or Vicente, to any bank account of BGS Colombia**.

Motion at 4 (emphasis in original).

In their opposition, the Applicants agree that they must show that their discovery request has "some relevance" to a foreign proceeding.  See Opposition Memorandum at 7 (DE# 33, 4/10/18) (quoting In re Application of Chevron Corp., 2012 U.S. Dist. LEXIS 123315, at *22 (S.D. Fla. June 12, 2002)).  The Applicants contend that they satisfy the "for use" requirement because they have the procedural right to submit the

discovery in the Colombian Court and the requested discovery is relevant to the Applicants' claims that the Delcop Group failed to make the initial $7 million loan and the fraudulent invoices issued by Delcop, LLC (the Florida company) resulted in the fraudulent dilution of the Applicants' stock in BGS Colombia. See Declaration of Heli Abel Torrado at ¶¶12-13, 20-21 (DE# 33-18, Ex. C, 4/10/18); and (DE# 6, Ex.11). In their Motion, Delcop and Ernesto maintain that "contrary to the Applicants' allegations, the 'Delcop Group' did indeed contribute the $7 million, and the corporate actions involving BGS Colombia were both adequate and necessary to protect the viability of the venture." Motion at 5, n. 5(DE# 25, 3/1/18). The Applicants argue that the personal banking records of the De Lucas as well as Delcop are indisputably relevant because the Delcop Group's alleged $7 million loan to BGS Colombia at the commencement of the parties' relationship is a hotly disputed issue at the heart of the Colombian Mercantile Case, where the Applicants allege that the Delcop Group breached the parties' underlying contract by failing to provide this substantial initial financing. Opposition Memorandum at 8 (DE# 33, 4/10/18) (DE# 6, Ex. 11).

The Applicants have satisfied the "for use" requirement because the Applicants have the ability "to inject the requested information into a foreign proceeding" and the "requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" See In re Accent Delight Int'l Ltd, 869 F.3d 121, 132 (2d Cir. 2017) (quoting Mees v. Buiter, 793 F.3d 291, 298 (2d Cir. 2015) (citation omitted)).

Relying on Intel, Delcop and Ernesto urge this Court to exercise its discretion and deny the 1782 discovery on the "for use" ground because the "Applicants may well attempt to use the discovery sought here for more than just the Colombian Mercantile

9

Case." Motion at 11 (DE# 25, 3/1/18). The Eleventh Circuit found that "nothing in the language of § 1782 ... purports to limit later uses of evidence that have been properly obtained under § 1782." Glock v. Glock, 797 F.3d 1002, 1006 (11th Cir. 2005) (holding as a matter of first impression that Section 1782 does not bar, as a matter of law, the use of evidence obtained pursuant to it in subsequent United States civil litigation). Id. at 1010. Relying on the Eleventh's Circuit's decision in Glock, the Second Circuit "[held] that Section 1782 does not prevent an applicant who has lawfully obtained discovery under [Section 1782] with respect to one foreign proceeding from using that discovery elsewhere unless the district court orders otherwise." In re Accent Delight Int'l Ltd, 869 F.3d at 135.

### 2. Directed at a Person "Found" or "Residing" in District

Delcop and Ernesto argue that Carmelo and Vicente, two of the discovery targets of the 1782 Application, do not "reside" and are not "found" in the Southern District of Florida. Motion at 7 (DE# 25, 3/1/18) (citing 28 U.S.C. § 1782(a)). Both Carmelo and Vicente maintain that they are Venezuelan citizens who live in Caracas, Venezuela, but at the time of their declarations were "physically present" in Bogota, Colombia, and do not reside at this time in the United States and are not found in this district. See Carmelo Declaration ¶¶ 6-11 (DE# 25-8, Ex. H); Vicente Declaration ¶¶ 6-11 (DE# 25-9, Ex. I). Both qualified their declarations, stating "[f]or the time being, I do not have plans or the intention of [traveling] to the United States." Id. at ¶ 11.

Delcop and Ernesto rely on In re Application of MTS Bank, Case No. 17-21545-MC, 2017 WL 3276879, at *6 (S.D. Fla. Aug. 1, 2017) (hereinafter "MTS Bank [August]"), wherein the court granted in part a motion to quash subpoenas pursuant to

10

28 U.S.C. § 1782 because the 1782 applicant failed to satisfy the "found" requirement of an individual, Mr. Pleshakov.  Instead, the evidence proffered related solely to a Florida corporation, Sky Ocean.  Notably, the court ruled that the Florida corporation, Sky Ocean, was "found" in the district and allowed the 1782 applicant to take limited discovery to establish sufficient facts that Mr. Pleshakov "resides" or can be "found" in the district.  Id.

In the present case, the 1782 Applicants rely on an earlier ruling in the same case as Delcop and Ernesto, namely In re Application of MTS Bank, Case No. 17-21545-MC, 2017 WL 3155632 , *4-5 (S.D. Fla. July 25, 2017), *report and recommendation affirmed and adopted,* 2017 U.S. Dist. LEXIS 126266 (S.D. Fla. Aug. 8, 2017) (hereinafter "MTS Bank [July]).  In MTS Bank [July], the court ruled that owning Florida real property, paying real estate taxes, owning two automobiles, owning a Florida telephone number and conducting financial transactions in Florida constituted being "found" in the district for purposes of Section 1782. Id. at *5 (comparing Fla. Stat. § 48.193: 'Owning, using, possessing or holding a mortgage or other lien on any real property within this state' subjects a person to the jurisdiction of Florida courts").

The facts proffered in the present case are more similar to the facts in MTS Bank [July] and likewise satisfy the "found" requirement of Section 1782.

Vicente's extensive Florida contacts include: holding a Florida Driver's License since 2009, which was renewed on August 24, 2017 and indicated that he is a resident of 7024 NW 113th Place, Doral, Florida 33178, which is the same address listed on his four Florida Driver's Licenses issued since 2009; 2) Vicente purchased a Florida home on July 1, 2009 for $850,000 and he pays real estate taxes to Miami-Dade County on

this property; 3) on or about June 25, 2007, Vicente purchased a condominium for $300,000 located at 7340 NW 114th Avenue, Apt. 201, Doral, Florida 33178, and pays real estate taxes to Miami-Dade County on this property; 4) Vicente secured and signed on behalf of Inversiones Davier, Inc., a Florida corporation, a loan in the amount of $762,000 from Ocean Bank, the largest state-chartered bank in Florida, secured by Units 105, 106, 141 and 142, Dolphin Park Commerce, a condominium in Miami, Florida, on or around December 20, 2006; 5) Vicente executed a Power of Attorney on or around June 2, 2008 in the State of Florida in favor of Ernesto "to execute all documents, including but not limited to a personal, unconditional and continuing guaranty, relating to a loan to be given by Regions Bank to Delcop, a Florida limited liability company in the amount of $875,000" to be secured by Unit 5A of Plametto [sic] West Park Condominium, also in Miami, Florida; 6) Vicente serves as a managing member of Delcop, LLC, a Florida limited liability company; 7) Vicente served as an officer of Florida LLC, Inversiones Davier, Inc.; 8) Vicente served as an officer of Florida corporation Delcop, Inc.; 9) Vicente served as a director of Florida corporation, Okyton Corp.; 10) Vicente served as a manager of Florida limited liability company, Inversiones Davier, LLC; and 11) Vicente served as a manager of Florida limited liability company, OKT Solutions LLC.  See Declaration of Courtney Caprio at ¶¶ 4-16 (DE# 33-1, Exhibit A, 4/10/18).

Carmelo has the following Florida connections: 1) on or around July 11, 2014, Carmelo purchased his Florida home located at 11200 NW 73rd Street, Doral, Florida 33178 for $525,000 and pays real estate taxes to Miami-Dade County on this property; 2) Carmelo serves as a managing member of Florida limited liability company, Delcop,

LLC; 3) Carmelo served as a director of Florida corporation, Delcop, Inc.; 4) Carmelo served as a director of Florida corporation, Inversiones Davier, Inc.; and 5) Carmelo served as a director of Florida corporation, Okyton Corp.  See Declaration of Courtney Caprio at ¶¶ 17, 10-11, 14 (DE# 33-1, Exhibit A, 4/10/18).

Vicente and Carmelo's numerous Florida connections, including owning residential property, paying Florida real estate taxes, and serving as directors in four to six Florida corporations and/or limited liability companies and conducting those businesses in Florida since 1993 establish that Vicente and Carmelo are "found" in this district. See MTS Bank [July], 2017 WL 3155632 , at *4-5.  This Court finds that the Applicants satisfied the "found" requirement of Section 1782.

### B.    Four *Intel* Factors

#### 1.    Discovery from Participant or Nonparticipant in Foreign Proceeding

In Intel, the Supreme Court explained that "when the person from whom discovery is sought is a participant in the foreign proceeding ..., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  Intel, 542 U.S. at 264.  "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  Id.  (citation omitted).   "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a)."  Id. (citation omitted).

In the present case, Delcop and Ernesto argue that the first *Intel* factor favors

vacating the Order granting 1782 discovery because two of the discovery targets, Delcop and Vicente De Luca, are parties in the foreign proceeding. Motion at 2 and n.1 (DE# 25, 3/1/18); <u>see</u> Memorandum in Support of *Ex Parte* Application at 3, 6 (DE# 6, 1/19/18)). Additionally, "both Delcop and Vicente–and Carmelo and Ernesto, for that matter–have agreed to appear in Colombia, if required." Motion at 17 (DE# 25, 3/1/18) (citing Ex. F ¶ 8; Ex. H ¶ 13, Ex. I ¶13). The Motion states that Delcop and Vicente will defend in Colombia. <u>Id</u>.

Delcop and Ernesto concede that a limited exception allows an applicant to seek discovery against a party to the foreign proceeding where the documents or information sought is "beyond the reach" of the foreign court, but argue that the Applicants have made no such argument and no showing in the present case. <u>Id</u>. (citing <u>In re Application of UAB "Velde" f/k/a VP Grupe, UAB</u>, 2014 U.S. Dist. LEXIS 66173, at *10-11 (S.D. Fla. May 2, 2014).

The Applicants argue that courts in the Eleventh Circuit and elsewhere will order Section 1782 discovery in support of foreign litigation from parties to that litigation, especially when those parties are not actively participating or are outside the scope of the foreign court's reach. Opposition Memorandum at 9 (DE# 33, 4/10/18) (citing among others <u>In re Clerici</u>, 481 F.3d at 1334-35) (first *Intel* factor satisfied where respondent was a party to a Panamanian action but outside the purview of the Panamanian court) (other citations omitted).

In <u>Gyptec, S.A. v. Hakim-Daccach</u>, this Court explained:

> Even if the discovery is available to [the Applicants] in Colombia, this does not mean that [the Applicants are] not entitled to seek discovery using procedures set forth in Section 1782. The decision of how to seek

discovery lies with the party seeking discovery and requiring that [the Applicants] seek the discovery in Colombia would result in including an exhaustion requirement in section 1782 that is not present.

Gyptec, S.A. v. Hakim-Daccach, 2017 U.S. Dist. LEXIS 181778, *21-22 (S.D. Fla. Sept. 27, 2017), *report and recommendation adopted and stay lifted*,  2017 U.S. Dist. LEXIS 174226 (S.D. Fla. Oct. 18, 2017).  In Gyptec, the court found that the Applicant was entitled to seek section 1782 discovery irrespective of whether the target of the discovery stated that he would "submit to the discovery requests if ordered by a court in Colombia (or whether discovery of specific documents is allowed in Colombian procedures)."  Id.

The Applicants contend that despite Delcop and Vicente's representations[2] that they will participate in discovery in the Colombian Mercantile Case, the Applicants argue that the Colombian Court does not have the power to compel discovery from Delcop and Vicente that is located outside of Colombia, and the Colombian Court lacks jurisdiction over the Florida Banks, and Carmelo and Ernesto, who are indisputably not participants in the Colombian Mercantile Case.  Opposition Memorandum at 10 (citing the Torrado Declaration) (DE# 33, Ex. C ¶¶14-17).

The first *Intel* factor weighs in favor of the Applicants as to Ernesto, Carmelo and the Florida Banks, who are not parties to the Colombian Mercantile Case.  Although the first *Intel* factor may weigh slightly in favor of Delcop and Vicente because they are

_____

[2]The Applicants offer evidence of Vicente's past, undisclosed contempt for his discovery obligations through the Statement of Pablo Riveros, Exhibit D at ¶ 3 (DE# 33-20), a Colombian attorney who stated under oath that "the Ninth Civil Court of the Circuit of Bogota, Colombia decreed the confession of the party summoned to meet the interrogation" for failing to "appear[ ] during the hearings scheduled in that judicial office ...."  "[T]he confession ruling made by the court was sustained" on appeal. Id.

parties to the Colombian Mercantile Case, the Applicants are permitted to seek

discovery pursuant to Section 1782 because the Colombian Court lacks the power to

compel discovery from Delcop and Vicente that is located outside of Colombia.

> 2. Nature of Foreign Tribunal, Character of Abroad Proceedings and
> <u>Receptivity of Foreign Tribunal to United States Judicial Assistance</u>

The second *Intel* factor requires the analysis of "the nature of the foreign tribunal,

the character of the proceedings underway abroad, and the receptivity of the foreign

government or the court or agency abroad to U.S. federal-court judicial assistance."

<u>Intel</u>, 542 U.S. at 264-65; <u>In re Clerici</u>, 481 F.3d 1324, 1334 (11th Cir. 2007). In <u>In re</u>

<u>MTS Bank</u>, No. 17-MC-21545, 2017 U.S. Dist. LEXIS 120232, at *24-25 (S.D. Fla. Aug.

1, 2017), the district court explained

> The second *Intel* factor examines whether the foreign tribunal is willing to
> consider the information sought.  Another "nation's limit on discovery
> within its domain for reasons peculiar to its own legal practices, culture or
> traditions ... do[es] not necessarily signal objection to aid from United
> States federal courts."  Instead, courts look for authoritative proof that a
> foreign tribunal would *reject* evidence obtained with the aid of § 1782 ...
> Absent this type of clear directive, however, a district court's ruling should
> be informed by section 1782's overarching interest in providing equitable
> and efficacious procedures for the benefit of tribunals and litigants
> involved in litigation and international aspects.

<u>Id</u>. (internal quotations and citations omitted) (emphasis in original) (allowing § 1782

discovery due to "lack of authoritative evidence that Russian courts are not receptive to

American judicial assistance"); <u>accord</u> <u>In re Godfrey</u>, 2018 U.S. Dist. LEXIS 29794, at

*26 (S.D. Fla. Feb. 22, 2018) (holding same).

"The party opposing discovery under Section 1782(a) has the burden of

demonstrating offense to the foreign jurisdiction, or any other facts warranting denial of

a particular application."  <u>In re Chevron Corp.</u>, 633 F.3d 153,162 (3rd Cir. 2011).

Delcop and Ernesto argue that the second *Intel* factor weighs in their favor because the Superintendents is an administrative panel of limited jurisdiction that could not provide judicial assistance to a similar request from a United States court.  Motion at 17 (citing Miranda Declaration at ¶¶ 4-6).  Additionally, Delcop and Ernesto argue that the pending Colombian Request for Assistance weighs against the Applicants.

Delcop and Ernesto rely on Green Development Corp. S.A. De C.V. v. Zamora, No. 15-MC-21594-Goodman, 2016 WL 2745844, at *8 (S.D. Fla. May 10, 2016), wherein U.S. Magistrate Judge Goodman vacated his prior order granting a Section 1782 application where a similar application had been denied by Maryland District Court Judge Gesner.  Judge Goodman adopted Judge Gesner's reasoning that "[a]lthough 'Section 1782(a) does not incorporate an exhaustion requirement, an applicant is not required to first seek evidence from the foreign tribunal,' whether a petitioner has sought the intended discovery from the foreign tribunal does have some bearing on the foreign court's receptivity to American judicial assistance."  Id. (citations omitted).

The Applicants argue that Delcop and Ernesto's reliance on Green Dev. to argue that the Applicants have violated their duty of candor to this Court is misguided, at best. Opposition Memorandum at 17 (DE# 33, 4/10/18).  The Green Dev. decision involved a Section 1782 applicant's failure to disclose that it had petitioned two (2) additional U.S. District Courts for similar Section 1782 discovery after it filed its initial Section 1782 petition with this Court.  The applicant in Green Dev. failed to disclose in its opposition memorandum to Zamora's motion to quash that the Maryland District Court had denied the applicant's similar Section 1782 petition one month earlier and then proceeded to attach this Court's sealed order granting the Section 1782 relief as a basis for its

objections to the Maryland district court's report and recommendation – immediately before filing the opposition – without mentioning anything to this Court.  Green Dev., 2016 WL 2745844, at *7.  In contrast to Green Dev., the parties' competing South American criminal cases – that are initiated on the equivalent of swearing out a U.S. police report – do not impact the Section 1782 analysis for use of the requested evidence in the civil Colombian Mercantile Case, or even for use in those cases.  See, Chevron, 2012 U.S. Dist. LEXIS at *22-23, In re Accent Delight Int'l Ltd., 869 F.3d 121, 133-35 (11th Cir. 2017); see also Ex. C at ¶ 11; Ex. F at ¶¶ 9-12; Ex. G at ¶¶ 9-11.

"[R]eciprocity between the United States and the foreign government is not required for a district court to grant a discovery request under § 1782."  In re FG Wilson Ltd., No. 10-20839-CIV, 2011 U.S. Dist. LEXIS 30733, *10 (S.D. Fla. Jan 4, 2011), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 30756 (S.D. Fla. Mar. 24, 2011) (Colombian court not unreceptive to U.S. judicial assistance); Gyptec, S.A. v. Hakim-Daccach, No. 16-CIV-20810, 2017 U.S. Dist. LEXIS 181778, at *23-24 (Fla. Dist. Ct. Sept. 27, 2017)(Colombian courts receptive to § 1782); In re Dep't of Antioquia, No. 16-CIV-20335, 2017 U.S. Dist. LEXIS 179442, *9-10 (S.D. Fla. Oct. 27, 2017) (same).  Because Delcop and Ernesto offer no "authoritative proof that the [Colombian Court] would reject the [United States] evidence sought," the second *Intel* factor favors the Applicants.

3.       Conceals an Attempt to Circumvent Foreign or United States Discovery Restrictions or Policies

Pursuant to the third *Intel* factor, a district court should consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions

or other policies of a foreign country or the United States." Intel, 542 U.S. at 265 (citation omitted). Delcop and Ernesto argue that the Applicant's 1782 Application is an attempt to circumvent Colombian law in light of the pending Colombian Request for Assistance. Motion at 18. The Applicant's Colombian Request for Assistance was made directly to the Superintendents in Colombia and has not been decided. Id. Delcop and Ernesto argue that the Applicant's must wait for the Superintendents' ruling on the Colombian Request for Assistance. Miranda Declaration at 9-10. Delcop and Ernesto further argue that the discovery sought in the Applicant's Section 1782 Application constitutes extraprocedural evidence, which must be obtained before the proceedings are commenced according to Colombian law. Because the Colombian Mercantile Case has been pending for more than a year and the Colombian Request for Assistance remains pending, extraprocedural evidence obtained at this point violates Colombian law. Miranda Decl. at 8.

The Applicants maintain that their Application does not "attempt to circumvent" Colombian law or procedure. Opposition Memorandum at 13 (citing In re Clerici, 481 F.3d at 1334). The Supreme Court has made clear that the Applicants do not need to demonstrate that the discovery would be obtainable in Colombia (i.e. pursuant to the Request for Assistance that remains pending) in order to authorize § 1782 discovery. Intel, 564 U.S. at 261. The Applicants argue further that Delcop and Ernesto's "contravention of foreign proof-gathering restrictions" argument that the Applicants must first wait for the resolution of the pending Request in Colombia is both incorrect as a matter of Colombian law and impossible as a matter of United States law. Torrado Declaration at ¶¶ 12-16. Although the Applicants concede through the Torrado

19

Declaration that "[u]nder Colombian law, a plaintiff generally has to identify all facts, documents and witnesses supporting its claim at the time of filing the action," Mr. Torrado explains that "[w]hen a new party is authorized to be added as a indispensable party to a civil action, Colombian law authorizes additional evidence that can be submitted for admission and considered because, for this party, it is the equivalent of the commencement of the case." Id. at ¶¶ 12-13 (citing Articles 82 and 173 of the General Code of Procedure (Law 1564 of 2012)). Additionally, according to Mr. Torrado courts in Colombia only have jurisdiction in Colombian territory and cannot compel the production of evidence located outside the Colombian territory. Id. at ¶¶ 15-17 (Articles 41, 182, 236-238, and 265-67 of the General Code of Procedure (Law 1564 of 2012)). Thus, the Applicants argue that the addition of Delcop LLC as an indispensable party in the Colombian Mercantile Case allows the Applicants to submit all of the evidence requested in the United States Section 1782 Application, since the procedural opportunities to provide evidence were opened again pursuant to Article 173 of the General Code of Procedure (Law 1564 of 2012). Id. at ¶ 21. Also, because Colombian law does not authorize the Colombian Court to compel Delcop, the De Lucas and the Florida banks to provide evidence located outside of the Colombian territory, the 1782 discovery is necessary. Thus, the third Intel factor favors the Applicants.

4. Unduly Intrusive or Burdensome

The fourth and final Intel factor considers whether the 1782 Application contains "unduly intrusive or burdensome requests." Intel, 542 U.S. at 265. "[U]nduly intrusive or burdensome requests may be rejected or trimmed." Id. Relying upon In re Kivisto,

20

521 F. App'x 886, 888 (11th Cir. 2013) (unpublished), Delcop and Ernesto contend that the fourth *Intel* factor weighs heavily against the 1782 Application. In the unpublished Kivisto decision, the Eleventh Circuit explained that "[t]he district court also may consider whether the application contains 'unduly intrusive and burdensome requests,' is 'made in bad faith, for the purpose of harassment,' or is part of a 'fishing expedition.'" Kivisto, 521 F. App'x at 888 (internal and other citations omitted).

The Applicants argue that the Eleventh Circuit rejects "all-or-nothing discovery challenges" regarding section 1782 applications. Opposition Memorandum at 15 (quoting JAS Forwarding (USA), Inc., 747 F.3d at 1272-73 (finding persuasive the Seventh Circuit's reasoning in Heraeus Kulzer, GmbH v. Bioment, Inc., 633 F.3d 591, 597-98 (7th Cir. 2011), wherein the Seventh Circuit held that a district court's complete denial of a section 1782 application was an abuse of discretion); and citing In re Clerici, 481 F.3d at 1335). "If [the section 1782 application is] asking too much, the district court can and should cut down [the] request, but not to nothing, as it did." Id. (quoting Heraeus Kulzer, 633 F.3d at 597-98).

Delcop and Ernesto argue that the discovery sought in the Delcop Subpoena, Ernesto Subpoena, and Florida Bank subpoenas, as well as the proposed subpoenas to Carmelo and Vicente, is not only intrusive and burdensome, but also abusive, harassing and a clear "fishing expedition." Motion at 19 (quoting In re Kivisto, 521 F. App'x 886, 888 (11th Cir. 2013) (unpublished) (internal and other citations omitted) (affirming denial of application for discovery of counsel for the Florida Bar, "for discovery in aid of a foreign proceeding involving Kivisto's right to engage in the practice of law in Canada" because the district court found the 1782 application to be

21

made in bad faith, as a fishing expedition and a means to harass).

The Applicants maintain that the requested financial and corporate documents and related testimony are relevant and go to the heart of the Colombian Mercantile Case: that Delcop improperly acquired thousands of shares in BGS Colombia based on alleged debts BGS had incurred for services Delcop [LLC] performed in Florida and loans it made to BGS Colombia. The board minutes, documents relating to the services performed by Delcop, the Salt Mine Project, the negotiation and restructuring of BGS Colombia's debt and intercompany transactions, and the corporate and financial records of BGS Colombia and Delcop – as it relates to the Salt Mine Project – are relevant under the liberal Federal Rules. Additionally, the personal financial records of Ernesto, Carmelo and Vicente requested from the Florida Banks are equally relevant because the Delcop Group has put these documents at issue by stating that they provided the $7 million initial financing, which is strongly disputed in the Colombian case. Opposition Memorandum at 15-16 (citing In re O'Keefe, 184 F. Supp. 3d 1362, 1370-71 (S.D. Fla. 2016) (overruling magistrate's denial of § 1782 petition because party had injected accuracy of allegation into proceeding); and citing Torrado Declaration at ¶¶ 27-28). Carmelo purportedly provided funds to BGS Colombia which makes his financial records relevant in the Colombia Case. Id. at 16 (citing DE# 6, Ex. 11). A traditional protective order can address the confidentiality concerns that Delcop and Ernesto raise. See, e.g., In re Application of Mesa Power Group, LLC, 878 F. Supp. 2d 1296, 1306 (S.D. Fla. 2012); In re NRC Holding, Ltd., No. 14-MC-61962, 2015 U.S. Dist. LEXIS 15831, *8 (S.D. Fla. Feb. 10, 2015) ("The fact that some requests may encompass confidential information does not necessitate that § 1782 subpoena be

quashed in its entirety. Appropriate measures may be taken to protect the confidentiality of materials.").

Delcop and Ernesto have not shown "that § 1782(a)'s preservation of legally applicable privileges ... and the controls on discovery available to the District Court, see, *e.g.*, Fed. R. Civ. Proc. 26(b)(2) and (c), would be ineffective to prevent discovery of [Delcop and Ernesto's] business secrets and other confidential information." Intel, 542 U.S. at 266. The fourth *Intel* factor weighs in favor of the Applicants because they have shown the relevance of the 1782 discovery requests and that a traditional protective order can protect discovery targets' confidentiality concerns.

### C.   Rule 45 and Location of Responsive Documents

Rule 45 of the Federal Rules of Civil Procedure requires that subpoenaed parties "produce designated documents, electronically stored information, or tangible things in [the parties'] possession, custody or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). "[T]he only geographical limitation provided by Rule 45 concerns the location for the *act of production*–not the location of the documents or information to be produced (Rule 45(c)(2)(A))." Sergeeva v. Tripleton Int'l Ltd., 834 F.3d 1194, 1200 (11th Cir. 2016) (footnote omitted)(emphasis in original). "[T]he location of responsive documents and electronically stored information–to the extent a physical location can be discerned in this digital age–does not establish a *per se* bar to discovery under § 1782." Id. The Eleventh Circuit "broadly construed 'control' for purposes of discovery as 'the legal right to obtain the documents requested upon demand.'" Id. at 1201 (quoting SeaRock v. Stripling, 736 F.2d 650, 653-54 (11th Cir. 1984)). "'The legal right to obtain the

documents requested upon demand' may be established where affiliated corporate entities–who claim to be providers of complimentary and international financial services–have actually shared responsive information and documents in the normal course of their business dealings." Id. (quoting SeaRock, 736 F.2d at 653-54). It is well established in the Eleventh Circuit that § 1782 has "extraterritorial reach." Fuhr v. Credit Suisse AG, 687 F. App'x 810, 816, n.8 (11th Cir. 2017) (unpublished) (rejecting argument "that the district court lacked the power to compel production of the documents that [applicant] sought because the documents were located abroad, and § 1782 does not have extraterritorial reach.").

D.    Stay

Delcop and Ernesto argue in the alternative that this Court should stay the 1782 proceeding until the Superintendents issue a decision regarding the prior and pending Colombian Request for Assistance. Delcop and Ernesto's reliance on the district court's decision in In re Application of Alves Braga, 789 F. Supp. 2d 1294, 1307-08 (S.D. Fla. 2011) is misplaced. Braga is factually distinguishable. In Braga, the legality of the applicant's actions, which were contended to violate the law of the Cayman Islands and Brazil, was at issue in both countries. The party seeking a stay in Braga argued that the 1782 application sought duplicative evidence and was an attempt to circumvent the proof gathering requirements of Brazilian law.

None of the concerns facing the district court in Braga exist in the present case. There are no allegations that the Applicants here have conducted any illegal or improper discovery in any other forum; the ruling that has been sought in the Request is not dispositive of the willingness of the Colombian courts to accept discovery from this

1782 proceeding (see Ex. C at ¶¶12-13, 20-24, 29); and if the Applicants obtained the evidence they seek in this 1782 proceeding, the Colombian Court would be receptive to it despite the pendency of the Request for Assistance.  See, id. at ¶ 13; see  Gyptec, S.A. v. Hakim-Daccach, No. 16-CIV-20810, 2017 U.S. Dist. LEXIS 181778, at *23-24 (Fla. Dist. Ct. Sept. 27, 2017)(Colombian courts receptive to § 1782); In re Dep'ts of Antioquia, No. 16-CIV-20335, 2017 U.S. Dist. LEXIS 179442, *9-10 (S.D. Fla. Oct. 27, 2017) (same).

In Braga, the district court explained that international abstention principles apply to determine the propriety of a stay pending resolution of a related foreign litigation, and issued a stay after analyzing the following three factors: "(1) international comity; (2) fairness to litigants; and (3) judicial efficiency."  Braga, 789 F. Supp. 2d at 1308-11(citing Turner Entm't Co. v. Degeto Film GmbH, 25 F.3d 1512, 1518 (11th Cir. 1994)).

In Braga, the district court explained that international comity in the abstention context is derived from the leading Supreme Court case, Hilton v. Guyot, 159 U.S. 113 (1895):

> 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

Hilton, 159 U.S. at 143.  "Abstention [on the ground of international comity] is the exception instead of the rule." Ortega Trujillo v. Conover & Co Commc'ns, 221 F.3d 1262, 1265 (11th Cir. 2000). "'[C]ourts regularly permit parallel proceedings in an American court and a foreign court.....'" Id. (quoting Turner Entertainment Co. v. Degeto

25

Film, 25 F.3d 1512, 1519 (11th Cir. 1994)).  Staying this case in favor of a non-dispositve ruling from the Colombian Court on the Request under the circumstances of the present case "would contradict the express purpose of section 1782."  See, John Deere Ltd. v. Sperry Corp., 754 F.2d 132, 135-36 (3d Cir. 1985) (reversing district court's denial of 1782 application that was based on a finding of a lack of reciprocity in issuance of letters rogatory and a prediction that the subject discovery would be inadmissible under Canadian law).

The fairness to the litigants and judicial efficiency factors favor the Applicants because the Colombian Court lacks jurisdiction over Ernesto, Carmelo and the Florida Banks, and cannot compel any member of the Delcop Group to produce documents located outside of Colombian territory.  Accordingly, a stay of the 1782 proceeding is not warranted.

## **CONCLUSION**

In accordance with the foregoing, it is

ORDERED AND ADJUDGED that Delcop, LLC's and Ernesto De Luca's Motion and Incorporated Memorandum of Law to Vacate *Ex Parte* Order Granting Application for Discovery under 28 U.S.C. § 1782 and to Quash Subpoenas or, in the Alternative, to Stay; and Rule 45 Objections (DE# 25, 3/1/18) is DENIED.

DONE AND ORDERED at the United States Courthouse, Miami, Florida this **3rd** day of July, 2018.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record